UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        No. 1:06-CR-39

v.        Hon. Robert Holmes Bell
        Chief United States District Judge

JAMEEL MCGEE,

        Defendant.
_____/

## GOVERNMENT'S TRIAL BRIEF

Now comes the United States of America, by and through its attorneys, Margaret M. Chiara, United States Attorney for the Western District of Michigan, and Brian P. Lennon, Assistant United States Attorney, and files the government's trial brief with a short summary of the expected evidence and applicable law.

## FACTUAL SUMMARY

On February 8, 2006, Officer Andrew Collins of the Benton Harbor Police Department was working with a confidential informant (CI) when the CI called "Zoike," an individual Officer Collins knew to be the Defendant, Jameel McGee. The CI placed the call from within the Benton Harbor Police Department and spoke with Defendant McGee via their Nextel direct-connect two-way telephones. The purpose of the telephone call was to arrange the purchase of an ounce of cocaine base, commonly referred to as "crack" or "crack cocaine." Officer Collins monitored the initial telephone call and the subsequent calls between the CI and Defendant McGee as the CI used his speaker function to communicate with Defendant McGee. Officer Collins instructed the CI to request an ounce of cocaine base (crack) so the CI asked Defendant McGee for an "O," of "the hard." Officer Collins then heard Defendant McGee tell the CI that he "had the O" and that

he would meet the CI at the liquor store at North Fair and Edgecumbe Streets in Benton Harbor. Defendant McGee also said that it would cost "$800 for the O."

Officer Collins left the CI at the police station and proceeded to the meeting location – just a few miles away -- in an unmarked police car. When he saw that nobody was at the liquor store, Officer Collins returned to the police station. Back at the police station, the CI placed another call to Defendant McGee. A short time later, Officer Collins heard Defendant McGee tell the CI, "Alright, man, we're here on the side of the store, hurry up!" The CI then asked Defendant McGee what he was driving, and Defendant McGee replied, "I'm in a truck."

Officer Collins went back to the meeting location in his unmarked car, followed closely behind by a uniformed officer in a marked police vehicle.

As police approached the meeting location, Officer Collins observed Defendant McGee in the passenger seat of a Dodge SUV. Officer Collins, in his unmarked police car, pulled up to the driver's side front door of the Dodge SUV, and the marked police cruiser pulled in along the passenger side front door, closest to Defendant McGee.

Officer Collins quickly got out of his vehicle and instructed both the driver and Defendant McGee to get their hands up. The driver, whose hands were on the steering wheel protested but complied. Defendant McGee, on the other hand, did not comply with Officer Collins' instruction. Looking into the vehicle, Officer Collins saw Defendant McGee reach his hand into the cup holder area of the center console of the SUV before raising his hands as requested. At that time, Officer Collins did not see what Defendant McGee had in his hand and placed in the cup holder. Both Defendant McGee and the driver, later identified as Reginald Williams, were instructed to exit the vehicle, which they did.

On the floor of the SUV, Officer Collins observed what appeared to be marijuana. He then contacted an assistant Berrien County prosecuting attorney over the telephone, seeking and obtaining his concurrence that police had probable cause to search the Dodge SUV. When Officer Collins entered the SUV, he went immediately to the cup holder in the center console where he saw a portion of a plastic baggie sticking out of the cup holder. He removed the plastic bag with his bear hands and saw that it contained a substance that appeared to be an ounce of cocaine base (crack).

Officer Collins read Defendant McGee his Miranda warnings. McGee responded by saying, "Its not my vehicle, its not my crack, and I don't know shit."

While on the scene, Defendant McGee's Nextel telephone, which was in his pants pocket, began beeping, indicating an incoming direct-connect communication. Officer Collins recognized the voice on the incoming call as that of the CI, who was telling McGee that he (the CI) was almost there. As Officer Collins will explain, this was done so the Defendant Collins would not connect the police stop with the CI. After Officer Collins removed Defendant McGee's Nextel telephone from his pants pocket, he noted that the recent calls to McGee's telephone were from the CI's direct-connect number. Officer Collins confirmed this by comparing the direct connect number on McGee's incoming call list to the CI's direct connect number in his (Officer Collins') phone, which were identical.

Officer Collins also recovered $115 of U.S. currency in small denominations (2-$20s; 14-$5s; and 5-$1s) from Defendant McGee's person.

Laboratory analysis confirmed that the suspected controlled substance found in the vehicle is cocaine base (crack) with a total weight of 24.681 grams. No usable latent fingerprints were found on or lifted from the plastic baggie containing the crack cocaine.

On February 24, 2006, while being transported to federal court in Grand Rapids for his initial appearance, Lieutenant Roger Lange of the Berrien County Sheriff's Department read Defendant McGee his Miranda warnings again. Officer Bruce Modigell, who assisted Lieutenant Lange with the transport of McGee, took handwritten notes. Defendant McGee acknowledged that he understood his rights and elected to talk with the investigators without the presence or counsel of an attorney.

Lieutenant Lange is expected to testify that Defendant McGee told them that the crack cocaine in the vehicle belonged to the driver, Reginald Williams, not him (McGee). McGee admitted that he went along with Williams knowing Williams was going to deliver crack cocaine to a customer. McGee told the investigators that he saw the crack in the center console, and even held it in his hand. Defendant McGee also told the investigators that he (McGee) spoke with the police informant, but that he only did so to assist Williams who was driving the vehicle and because Williams is disabled.

## ELEMENTS OF THE OFFENSE
### Possession With Intent to Distribute Cocaine Base (Crack)
### 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)

The sole count in the Indictment charges the Defendant with possession with intent to distribute cocaine base (crack), in violation of Title 21, United States Code, Section 841(a)(1). Crack cocaine is a Schedule II controlled substance. Section 841(a)(1) provides, in relevant part, the following:

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally –
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . . .

The elements of possession with intent to distribute a controlled substance – in this case cocaine base – are (1) the knowing and intentional (2) possession of a controlled substance (3) with intent to distribute. See United States v. Clark, 928 F.2d 733, 736 (6th Cir. 1991).

Because of the weight of the cocaine base, the statutory penalty for this offense is a mandatory minimum five years in prison and a maximum 40 years imprisonment; a fine not to exceed $2,000,000; and a term of supervised release of at least four years. 21 U.S.C. §841(b)(1)(B)(iii).

To "distribute," within the meaning of Section 841(a)(1), means to deliver a controlled substance. 21 U.S.C. § 802(11). Intent to distribute may be established by circumstantial evidence. An inference of intent to distribute may be drawn from the quantity or estimated street value of the controlled substance involved. See, e.g., United States v. Faymore, 736 F.2d 328, 333 (6th Cir. 1984) (possession of a large quantity of drugs sufficient to show distribution); United States v. Dimitroff, 541 F.2d 629, 632-33 (6th Cir. 1976) (quantity of drugs possessed may show intent to distribute). Intent to distribute can also be inferred from evidence that drugs possessed by a defendant were not for personal use. See, e.g., United States v. Pennyman, 889 F.2d 104, 108 (6th Cir. 1989) (forty-five minute conversation with known drug dealer is sufficient evidence to support inference drugs were not for personal use and to infer intent to distribute). The presence of distribution paraphernalia may also establish an intent to distribute. United States v. Bingham, 81 F.3d 617, 633 (6th Cir. 1996) (firearm, bulletproof vest, a small

scale, a police scanner and local pager indicative of drug distribution). The manner in which the substance is packaged, *i.e.*, broken down into equal, distributable amounts, likewise is evidence of intent to distribute. United States v. Schmidt, 662 F.2d 498, 505 (8th Cir. 1981); United States v. White, 969 F.2d 681, 684 (8th Cir. 1992).

In this case, there is both circumstantial and direct evidence that the Defendant intended to distribute the crack cocaine seized from the Dodge SUV. By way of direct evidence, McGee's telephone conversations with the CI were monitored by Officer Collins, who heard McGee set the price for the ounce of crack cocaine and inform the CI when he (McGee) arrived at the liquor store with the crack cocaine. Moreover, while McGee initially denied any involvement in the drug transaction, in a post-Miranda statement to police while being transported to federal court, McGee told police that he was assisting the driver, Reginald Williams, with the distribution of the crack; specifically, that he held the crack cocaine in his hand and spoke with the police informant on the telephone while Williams drove the SUV, thereby admitting to aiding and abetting Williams' possession with intent to distribute the crack cocaine. By way of circumstantial evidence, the amount of crack cocaine itself is indicative of a distribution quantity.

The United States contends that while Defendant McGee's post-Miranda statement to Lieutenant Lange and Officer Modigell is an attempt to exculpate himself from the crime, it is tantamount to a confession that he "aided and abetted" Reginald Williams to possess with intent to distribute the crack cocaine. The government has requested that the Court instruct the jury as to the elements of the crime itself – possession with intent to distribute cocaine base – and "aiding and abetting" the crime. As the Court and defense counsel are aware, the government need not explicitly allege "adding and abetting" or cite 18 U.S.C. § 2 in the indictment for the

6

jury to consider it at trial, as "aiding and abetting," as an alternative theory of liability, is assumed in all criminal allegations. *See United States v. Lester*, 363 F.2d 68 (6th Cir. 1966).

## EVIDENTIARY ISSUES

### I. THE GOVERNMENT WILL ATTEMPT TO IMPEACH THE DEFENDANT UNDER RULE 609 IF HE TESTIFIES.

Should the defendant testify in his own defense at trial, the Government will seek to impeach his credibility with his criminal record, pursuant to Federal Rule of Evidence 609(a)(1). In this case, Defendant McGee has a recent felony conviction for car jacking. The Court must make the determination as to whether the probative value of admitting this evidence outweighs its prejudicial effect to the accused. Fed. R. Evid. 609(a)(1). The Court can combat any alleged prejudice with a cautionary instruction. See United States v. Meyers, 952 F.2d 914, 917 (6th Cir. 1992) (no abuse of discretion where defendant's prior conviction for a similar crime was used to impeach because his credibility was important and a cautionary instruction was given).

### II. DEFENDANT'S STATEMENTS ARE ADMISSIBLE AGAINST HIM.

Officer Collins and Lieutenant Lange are expected to testify that they advised the Defendant of his Miranda rights. Officer Collin is expected to testify that on February 8, 2006, Defendant McGee said, "Its not my vehicle, its not my crack, and I don't know shit." Lieutenant Lange, on the other hand, is expected to testify that on February 24, 2006, Defendant McGee had significantly more information about the crack cocaine in the SUV, and that he (McGee) admitted to holding the crack in his hand and talking with the police informant, but only because the driver, Reginald Williams, was driving the vehicle and is handicapped.

### III. THE GOVERNMENT WILL OFFER EXPERT TESTIMONY REGARDING NARCOTICS TRAFFICKING.

During the course of the trial, the Government intends to offer expert testimony as to the identification of the controlled substances found in the Dodge SUV. Rules 702 and 703 of the Federal Rules of Evidence govern testimony by expert witnesses. In qualifying experts, Rule 702 is to be broadly construed. See Mannino v. International Mfg. Co., 650 F.2d 846, 849 (6th Cir. 1981). In Mannino the Sixth Circuit ruled that:

> Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact.

650 F.2d at 851.

The Sixth Circuit has permitted experienced drug investigators to testify regarding aspects of drug transactions that are unlikely to be within the knowledge of the average layman. See, e.g., United States v. Pearce, 912 F.2d 159, 163 (6th Cir. 1990) (using firearms in crack houses); United States v. Straughter, 950 F.2d 1223, 1232-33 (6th Cir. 1991) (pricing of marijuana); see also United States v. Pugliese, 712 F.2d 1574, 1581-82 (2d Cir. 1983) (drug transactions); United States v. Agyen, 842 F.2d 203, 205 (8th Cir. 1988) (street value of heroin). It is permissible to elicit such testimony from investigators who also testify as fact witnesses. See United States v. Tocco, 200 F.3d 401, 418-419 (6th Cir. 1996).

                Respectfully submitted,

                MARGARET M. CHIARA
                United States Attorney

Dated: April 21, 2006            /s/  Brian P. Lennon
                                 BRIAN P. LENNON
                                 Assistant United States Attorney
                                 P.O. Box 208
                                 Grand Rapids, Michigan 49501-0208
                                 (616) 456-2404