RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0219p.06

FILED - GR
June 26, 2008 10:12 AM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: EC /

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>JAMEEL MCGEE,<br>*Defendant-Appellant.* | } | **FOR YOUR INFORMATION**<br><br>No. 06-2158<br><br>1:06 CR 39 |

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00039—Robert Holmes Bell, Chief District Judge.

Argued: October 23, 2007

Decided and Filed: June 24, 2008

Before: KEITH and ROGERS, Circuit Judges; ALDRICH, District Judge.*

---

### COUNSEL

**ARGUED:** John M. Karafa, McCROSKEY, FELDMAN, COCHRANE & BROCK, P.C., Muskegon, Michigan, for Appellant. Brian P. Lennon, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** John M. Karafa, McCROSKEY, FELDMAN, COCHRANE & BROCK, P.C., Muskegon, Michigan, for Appellant. Brian P. Lennon, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

### OPINION

---

ANN ALDRICH, District Judge. Defendant-appellant Jameel McGee ("McGee") appeals his conviction and sentence for possession with intent to distribute cocaine base, arguing that: 1) because his indictment contained no reference to aiding and abetting, the government should not have been permitted to argue it as an alternative theory of criminal liability; 2) the trial evidence was insufficient to sustain his conviction, entitling him to a judgment of acquittal under Rule 29(c)(1) of the Federal Rules of Criminal Procedure; 3) trial testimony containing statements by a confidential informant was admitted against him in violation of his confrontation clause rights; and 4) his sentence is unreasonable.

---

*The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

For the reasons that follow, we affirm McGee's conviction and sentence.

## I.  Background

McGee was indicted and subsequently convicted on a single count charge of "possession with intent to distribute cocaine base," in violation of 21 U.S.C. §§ 841(a)(i) and 841(b)(1)(B)(iii).

On February 8, 2006, a police confidential informant set up a drug transaction in the parking lot of a liquor store that led to McGee's arrest. At trial, Officer Collins, the arresting officer, testified that on February 8, 2006, he listened to a phone conversation between the confidential informant and McGee, in which they planned a drug exchange. Officer Collins then drove to the liquor store and waited for McGee. When McGee did not show up, Officer Collins drove a short distance back to the police station. Once there, the confidential informant again contacted McGee, and McGee indicated that he was "pulling up now" to the liquor store.

Officer Collins again returned to the liquor store with a uniformed police officer and found McGee sitting in the passenger seat of a parked Dodge Durango. At trial, Officer Collins testified that he ordered both McGee and the driver, Reginald Williams, to raise their hands to insure the officers' safety, noting that McGee made a "furtive gesture towards the center console of the vehicle."

McGee and Williams were removed from the vehicle, and Officer Collins saw marijuana on the floor of the driver's side of the vehicle. The officers then searched the vehicle and found a plastic bag of crack cocaine in the cup holder of the center console. They proceeded to *Mirandize* and arrest McGee and Williams. Throughout the arrest, Officer Collins never observed McGee actually possess the bag of cocaine. Rather, the only evidence taken from McGee and admitted at trial was the cell phone used to set up the drug transaction.

In addition to Officer Collins' testimony, the government called the other officer as a witness and entered six exhibits into evidence. McGee did not present any evidence. The jury returned a guilty verdict.

After the verdict, McGee filed a motion for judgment of acquittal pursuant to FRCP 29(c)(1) on the basis that the evidence, taken in the light most favorable to the prosecution, was insufficient to allow a rational jury to find beyond a reasonable doubt the essential elements of possession with intent to distribute. The district court denied the motion, and McGee was subsequently sentenced to 108 months in custody.

## II.  Analysis

### A.  Liability for Aiding and Abetting

McGee argues that the district court erred when it included an alternative "aiding and abetting" theory of criminal liability in the jury instructions because the single count indictment did not include "aiding and abetting" language or cite 18 U.S.C. § 2, the "aiding and abetting" statute. This alleged error, McGee argues, denied him procedural due process because he was not properly placed on notice of the charges against him.

We review jury instructions as a whole to determine "whether they fairly and accurately inform the jury of relevant considerations and explain the applicable law." *United States v. Prince*, 214 F.3d 740, 760-61 (6th Cir. 2000).

We begin our analysis, then, with the applicable "aiding and abetting" statute, Title 18 U.S.C. Section 2, which provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The Sixth Circuit has interpreted aiding and abetting as a theory of liability "embodied in every federal indictment, whether specifically charged or not," and not a distinct substantive crime. *United States v. Floyd*, 46 Fed. App'x. 835, 836 (6th Cir. 2002).

While all indictments must inform the defendant of the crime with which he or she is charged, *Russell v. United States*, 369 U.S. 749 (1962), we have long held that "[i]n keeping with the provisions of § 2 . . . an indictment need not specifically charge 'aiding and abetting' or 'causing' the commission of an offense against the United States, in order to support a jury verdict based upon a finding of either." *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966); *see also Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986) ("[A] defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process."); *United States v. Moore*, 460 F.2d 1265, 1256 (6th Cir. 1972). Thus, an indictment need not explicitly refer to aiding or abetting to support a jury verdict based on a finding under that theory.

Here, McGee attempts to distinguish this line of Sixth Circuit cases by relying on the fact that his indictment not only lacked language referring to aiding and abetting, but also failed to cite 18 U.S.C. § 2. McGee refers to the unpublished decision in *United States v. Taniguchi*, where this court considered whether an indictment that merely cited 18 U.S.C. § 2 gave the defendant notice of potential liability for aiding and abetting. 49 Fed. Appx. 506 (6th Cir. 2002). Because the indictment in *Taniguchi* contained a citation to 18 U.S.C. § 2, we reserved for later, in a footnote, "the question of whether the indictment before us would be sufficient had the United States failed even to cite the language of 18 U.S.C. § 2." *Id.* at 521 n.4. McGee urges this court to find that such an indictment is not sufficient.

However, given this court's interpretation of 18 U.S.C. § 2 as an alternative theory of liability, and our long-held decisions that aiding and abetting is embedded in federal indictments, we hold that an indictment need not charge or refer to 18 U.S.C. § 2 to support a conviction based on a theory of aiding and abetting.

Accordingly, the district court did not err in allowing the jury to consider "aiding and abetting" as an alternative theory of liability.

### B. *Sufficiency of the Evidence at Trial*

McGee asserts that he was entitled to a judgment of acquittal pursuant to Rule 29(c)(1) because the evidence offered at trial was insufficient to support his conviction.

"This court reviews de novo a denial of a motion for judgment of acquittal, but affirms the decision 'if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt.'" *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003) (quoting *United States v. Harrod*, 168 F.3d 887, 889-890 (6th Cir. 1999)).

To sustain the charge of possession with intent to distribute, the government was required to prove beyond a reasonable doubt that on or about February 8, 2006, McGee "(1) knowingly; (2)

possessed a controlled substance; (3) with intent to distribute." *United States v. Charles*, 138 F.3d 257, 265 (6th Cir. 1998).

Here, there is ample evidence in the record to support McGee's conviction. First, the government offered evidence that McGee possessed a controlled substance through Officer Collins' testimony and the crack cocaine found in the vehicle next to McGee. At trial, Officer Collins testified that on February 8, 2006, he listened to a telephone conversation over the speaker phone between McGee "Zookie" and the confidential informant. During that conversation, the informant requested an "O", or ounce, of crack cocaine, which Zookie agreed to sell for $800. Finally, Zookie told the confidential informant that they would meet that same day at "the store," which the informant understood to mean "Barnett's, the one on Fair and Edgecumbe." (Transcript, pages 51-3). Officer Collins testified that he knew "Zookie" to be Jameel McGee.

Officer Collins testified that he then went to Barnett's and waited between five and ten minutes. When Zookie did not arrive, the informant made another call to Zookie, whereupon Officer Collins heard Zookie say "I'm pulling up now. All right, I'm here, hurry up."(Transcript, pg. 56). When Officer Collins and another police officer arrived at Barnett's, they observed a parked Dodge Durango with McGee in the passenger seat. Officer Collins exited his vehicle, and approached the driver's side of the Durango, ordering both occupants to raise their hands. After the driver placed both hands on the steering wheel, Officer Collins observed McGee make "a furtive gesture towards the center console of the vehicle" before putting his hands up. (Transcript pg. 63).

Once the driver and McGee were removed from the vehicle, it was searched and Officer Collins found a small plastic bag containing more than 24 grams of crack cocaine in the center console cup holder. (Gov. Exhibit 5). While McGee was being handcuffed, his cell phone rang and the voice of the confidential informant came through the speaker phone asking McGee where he was. (Transcript, pg. 71). The Nextel phone's list of recent calls included the number of the confidential informant who asked to buy the crack cocaine earlier that day. (Gov. Exh. 6). Finally, the user name stored in the Nextel phone was "Zook," which Officer Collins identified as McGee's street name. (Transcript, pg. 74).

Officer Collins' testimony and McGee's corroborating actions, allow a rational jury to conclude that McGee was in possession of the crack cocaine.

Second, the government offered evidence that McGee intended to distribute the crack cocaine. Officer Collins' testimony also establishes that McGee intended to sell the confidential informant an "O", or an ounce, of crack cocaine for $800. Similarly, this same testimony, corroborated by McGee's own actions, established that McGee acted knowingly. A rational jury could find that McGee acted knowingly and with the requisite intent to sell crack cocaine.

Accordingly, McGee is not entitled to a judgment of acquittal because there is ample evidence upon which a rational jury could find McGee guilty beyond a reasonable doubt.

### C. *Violation of the Confrontation Clause*

McGee argues that he was deprived of his Sixth Amendment right to confront his accuser, which deprivation substantially affected his right to a fair trial and requires that his conviction now be reversed. Specifically, McGee argues that at trial, Officer Collins testified to statements made by the confidential informant that related to McGee's identity, but that McGee was not afforded the opportunity to confront, or cross-examine, the informant.

Generally, we review *de novo* evidentiary rulings relating to violations of the Sixth Amendment. *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir. 2004). However, violations of

the confrontation clause are also subject to harmless error analysis. *See, e.g., Chapman v. California*, 386 U.S. 18, 22-23 (1967). Errors are "'harmless' in terms of their effect on the factfinding process at trial" where "the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). In such cases, an otherwise valid conviction should not be set aside. *Id.*

The confrontation clause of the Sixth Amendment states, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

In *Crawford v. Washington*, the Court asserted that "not all hearsay implicates the Sixth Amendment's core concerns." 541 U.S. 36, 51 (2004). Rather, the court introduced a distinction between testimonial and nontestimonial statements for confrontation clause purposes, explaining that the protection applies only to prohibit "testimonial" statements when the declarant is not available to be cross-examined by the defendant. *Id.* "The threshold determination that we must make is whether the statements of a confidential informant to police are 'testimonial' in nature." *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004). The court must then consider the purpose of the testimonial statements, as the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9.

"The proper inquiry . . . is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Cromer*, 389 F.3d at 675. Under this inquiry, we held in *Cromer* that "statements of a confidential informant are testimonial in nature and therefore may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine the informant." *Id.* at 670-71.

Here, McGee argues that Officer Collins' testimony contained testimonial hearsay that was used to identify the supplier as McGee, and that McGee had no opportunity to cross-examine the informant. McGee points specifically to the re-direct examination of Officer Collins, where the prosecution sought to assuage concerns that Officer Collins misidentified McGee on the phone with the confidential informant. The prosecutor and Officer Collins had the following exchange:

Q: Now, what else did you do to confirm that the person your CPI [confidential police informant] was speaking to was Mr. McGee and not Mr. Rimpson?

A: I called the CPI back the next day and said, Hey, I know we called a few people. Who was the one that we finally got that we talked to?

Mr. Karafa (McGee's attorney): I object, Your Honor. The question's objectionable in the first place, but prior to the answer there's a lack of foundation. It's incompetence hearsay.

The Court: No, he's just saying what he did, I think. Overruled. Next question.

Mr. Lennon (for the government)

Q: You called the CPI; is that correct?

A: Right.

Q: *And confirmed who you were speaking - who he was speaking to that day?*

A: *Yeah, and he advised Zookie.*

(Transcript, pages 95-97, emphasis added).

The confidential informant's statement that he was talking to "Zookie" is testimonial because a reasonable person in the CI's position would anticipate his statements being used against the accused in investigating and prosecuting a crime. The purpose of the informant's statement is also used for the truth of the matter asserted; that is, to identify McGee as the person the CPI talked to on the phone, and with whom he arranged the drug buy. The admission of this evidence therefore violated the confrontation clause.

Nonetheless, the government introduced enough evidence at trial to establish McGee's guilt. We are confident in holding that the constitutional error was harmless beyond a reasonable doubt.

McGee's conviction does not depend upon the testimonial statements of the confidential informant. On direct examination, Officer Collins testified that he knew from personal contact with McGee prior to February 8, 2006 that his street name was Zook or Zookie. As Officer Collins' re-direct testimony also confirmed, McGee is the individual who showed up at the drug-buy with the drugs, and his cell phone contained a log of the confidential informant's recent call.

McGee argues that this case is analogous to *United States v. Cromer*, where the "central issue at . . . trial was not whether illegal activity occurred . . . but whether Cromer knowingly participated in that illegal activity." 389 F.3d at 677. The evidence in that case was "so tenuous that the jury in Cromer's first trial was unable to convict him." *Id.* There, the confidential informant's testimonial statements, as relayed through the testifying officer, were used to identify and implicate the defendant and went "to the very heart of the prosecutor's case." *Id.* Unlike the tenuous facts in *Cromer*, the government in this case provided evidence, independent of the confidential informant's testimony, to establish McGee's possession with the intent to distribute crack cocaine.

### D. Reasonableness of the Sentence

McGee argues that the sentencing court committed reversible error by imposing a sentence that is: 1) unreasonable because it failed to properly consider the factors listed in 18 U.S.C. § 3553(a); and 2) improperly based on considerations of disputed evidence beyond the offense of the conviction.

#### 1. McGee's Sentence is Reasonable

This court reviews sentencing determinations for reasonableness. *Rita v. United States*, 127 S.Ct. 2456, 2459 (2007); *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). While no longer bound by the Sentencing Guidelines, the sentencing court must still consider the Sentencing Guideline ranges along with the statutory concerns expressed in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 245 (2005). These statutory factors "will guide appellate courts . . . in determining whether a sentence is unreasonable." *Id.* at 260; *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006). Upon review, this court may find a sentence "unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

Although a sentence that falls within the Guidelines range receives a "rebuttable presumption of reasonableness," the sentencing court must nonetheless "articulate its reasoning sufficiently to permit reasonable appellate review, specifying its reasons for selecting the specific sentence within

that range." *Richardson*, 437 F.3d at 554 (internal quotation omitted). The sentencing court need not explicitly recite or discuss each factor, but the court must take seriously its obligation to communicate clearly its rationale for imposing the sentence so that both the defendant and the appellate court can understand the basis for the particular sentence. *See United States v. Williams*, 436 F.3d 706 (6th Cir. 2006). As part of this obligation, where a defendant "raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Richardson*, 437 F.3d at 554.

The factors that the sentencing court must consider under § 3553(a) include, in part, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to deter criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training; and (3) the kinds of sentences available.

Reviewing McGee's sentence for reasonableness, we find that the sentencing court adequately considered and applied both the Guidelines and the § 3553(a) factors in sentencing him to a term of 108 months, which represents the middle of the Guidelines range. The sentencing transcript shows that the § 3553(a) factors were properly considered and articulated in a manner that allowed for meaningful appellate review and understanding by McGee.

The sentencing court considered McGee's history and characteristics, including his employment and encounters with the juvenile and adult criminal systems. Similarly, the court noted the seriousness of the offense and the harm crack cocaine inflicts on familial relationships and the community at large. The court also noted that the sentence imposed would provide McGee with the time and opportunity to receive the emotional and vocational treatment needed to help him be a contributing member of the community. Finally, the court addressed the need to promote respect for the law, and to provide just punishment and adequate protection for the public against future drug related criminal conduct.

Further, while considering the above 3553(a) factors, the sentencing court addressed McGee's argument for a lower sentence and explained why the court rejected those arguments.

Accordingly, we find McGee's sentence reasonable.

### 2. *No Rule 32 Violation*

While neither McGee's nor the government's appellate briefs expressly discusses a violation of Rule 32 of the Federal Rules of Criminal Procedure, both parties indirectly raise this issue as part of their 'reasonableness' analysis, warranting separate consideration here.

McGee argues that the sentencing court improperly relied on disputed facts in the Pre-Sentence Investigation Report ("PSR"), which would violate Rule 32(i)(3). That rule provides that at sentencing, the court:

> (A) may accept any undisputed portion of the presentence report as a finding of fact;
>
> (B) must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and

Case 1:06-cr-00039-RHB   ECF No. 58, PageID.364   Filed 06/26/08   Page 8 of 9

No. 06-2158          *United States v. McGee*                                      Page 8

> (C) must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

Federal Rule of Criminal Procedure 32(i)(3).

We have previously held that where facts are controverted, "a court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *United States v. Solorio*, 337 F.3d 580, 598 (6th Cir. 2003) (quoting *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002)). However, the facts must be "sufficiently 'controverted' to trigger the sentencing court's fact-finding duty under Rule 32(c)(1) [the predecessor to Rule 32(i)(3)]." *United States v. Hurst*, 228 F.3d 751, 760 (6th Cir. 2000). In *United States v. Hurst*, for example, this court determined that the district court's fact-finding duty under Rule 32 had not been triggered where the defendant had failed to allege any factual inaccuracies in his objections to his PSR, or otherwise bring the matter to the court's attention during the sentencing hearing. *Id.* at 760.

Under the circumstances of this case, McGee did not sufficiently controvert the facts contained in his PSR to trigger the district court's duty under Rule 32(i)(3). Although he objected to the relevancy and factual accuracy of paragraphs 8 and 9 of his PSR in his sentencing memorandum, during the sentencing hearing he very clearly led the court to believe—whether intentionally or not—that his only objection was to the *relevancy*, and not the *veracity*, of the disputed portions of his PSR:

> The Court: Okay. Mr. Karafa [for McGee], any objections to the presentence report you wish to place before the Court here?
>
> Mr. Karafa: Your Honor, thank you. We have none to the sentencing guidelines or the criminal history category computation. As we set forth in our sentencing memorandum, we had three objections to Paragraphs 5, 8, and 9 containing factual data which did not impact the guidelines calculations at all, but made reference to certain factual transactions and/or persons that we respectfully submit are *not related* to the instant offense of conviction.
>
> *The Court: So the idea is relevancy?*
>
> *Mr. Karafa: Yes, Your Honor.*
>
> [comments by the government]
>
> The Court: Thank you. It appears that the statements that are provided in Paragraph 9 together with the background information in Paragraph 8 are in fact relevant. *There has been no argument that the statements are not - - are untrue or are forged or anything like that.*

[Transcript of Sentencing Hearing, pgs. 3-4, emphasis added]

While filing written objections to the factual accuracy of the PSR could be sufficient to trigger the sentencing judge's fact-finding duty under Rule 32(i)(3), we cannot find that to be the case when McGee subsequently misleads the judge about the nature of his objections during the sentencing hearing.

Accordingly, we find no Rule 32 violation.

## III.    Conclusion

For the reasons discussed above, we affirm McGee's conviction and sentence.